AVERY C. MacCRACKEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MacCracken v. Commissioner
Docket No. 633-87
United States Tax Court
T.C. Memo 1993-376; 1993 Tax Ct. Memo LEXIS 398; 66 T.C.M. (CCH) 455; August 23, 1993, Filed *398 Decision will be entered under Rule 155. For petitioner: Richard J. Nolan. For respondent: William R. Davis, Jr. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioner's Federal income tax, and additions to tax, for 1985 as follows: Additions to Tax
Deficiency Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2) $ 82,968.65
$ 17,835.91
$ 4,148.43 [1]
Deficiency Sec. 6654(a)
Sec. 6661
$ 82,968.65
$ 3,921.74
$ 8,296.87
After concessions, the issues for decision are: (1) Whether petitioner had unreported taxable income in 1985 in the amount determined by respondent (namely, $ 150,335). We hold that he did. (2) Whether petitioner's 1985 income is self-employment income. We hold that it is. (3) Whether petitioner is liable for the addition to tax under section 6651(a) for failure to file an income tax return for 1985. We hold that he is. (4) Whether petitioner is liable for the additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and *399 regulations for 1985. We hold that he is. (5) Whether petitioner is liable for the addition to tax under section 6654(a) for failure to pay estimated tax for 1985. We hold that he is. All section references are to the Internal Revenue Code in effect for 1985, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. On the date the petition was filed, petitioner resided in Telluride, Colorado. Background
Petitioner is a high school graduate, and attended 2 to 3 years of college. From the time he left college through the year at issue (1985), petitioner was not employed or engaged in business except on an occasional basis. Petitioner's last employment was in 1978 as a callup firefighter for the U.S. Forest Service. Petitioner began growing marijuana in the 1960s. In 1984, he and Melinda Moreland (Melinda), a person with whom petitioner lived "off and on", grew marijuana near Redding, California. They stored the marijuana in a large rental shed. In November 1984, the police raided *400 the premises. The police searched the shed and seized the marijuana. On November 15, 1984, the State of California, Shasta County, issued an arrest warrant in petitioner's name, a.k.a. Albert B. Royce and a.k.a. Avery Carter Johnson, [1] for possession of marijuana for sale. After the State issued the warrant, petitioner and Melinda drove to a bank in Redding where petitioner maintained a safe deposit box. Petitioner emptied and took with him the contents of the safe deposit box. He then fled with Melinda to Telluride, Colorado. According to Melinda, the box contained some cash and coins, but not in a notable amount. Petitioner and Melinda arrived in Telluride, Colorado, at the end of 1984 or the beginning of 1985. On or about January 10, 1985, petitioner, using the name Albert Johnson, purchased a 1982 Suncrest 20' Motorhome for $ 20,770 in cash. In early January 1985, *401 he purchased with cash: A sculpture for $ 8,500, stereo equipment for $ 13,813, a Bronco four-wheel drive vehicle for $ 17,000, and a horse trailer for $ 4,000. In March 1985, petitioner, again using the name Albert Johnson, entered into a contract to purchase the "Elks Building" in Telluride for $ 375,000; he deposited with the seller $ 15,000 in cash as earnest money towards the purchase. On or about April 23, 1985, petitioner, again using the name Albert Johnson, paid $ 6,000 in cash as downpayments on other properties in Telluride. In addition to the aforementioned purchases, petitioner made the following cash expenditures during 1985: Date
Recipient
Purpose
Amount May 15
Boyd's Auto Repair
Repair motorhome
$  153.36
Sept. 10 [1]
Delta Motors
Automobile repairs
271.00
Sept. 13 [1]
Not provided
Property down payment
2,500.00
Sept. 20 [1]
Dan E. Wilson
Retainer
300.00
Oct. 3 [1]
Donna M. Smith
Automobile insurance
100.00
Nov. 14
Jeans Westerner, Inc.
Apparel
150.00
Dec. 31 [1]
Not provided
Undenominated items
371.50
During 1985, petitioner deposited $ 93,172.50 into a checking account, *402 which he had opened under the name Albert Johnson, at the Bank of Telluride. The deposits included $ 15,000 from the return of the earnest money on the Elks Building purchase contract, $ 2,500 from the return of the down payment on the September 13, 1985, property purchase contract, and $ 21,040 from other nontaxable sources. Petitioner maintained a brokerage account with Birr, Wilson & Co. On June 13, 1985, Birr, Wilson & Co. issued a check to petitioner in the amount of $ 4,870.47 in liquidation of his account. In 1985, petitioner paid $ 54,145 in cash to acquire a 50-percent partnership interest in the Telluride Land Company (TLC); $ 2,445 of the $ 54,145 came from petitioner's Bank of Telluride account. In 1985, petitioner loaned his partner in this venture between $ 39,000 and $ 54,000. In 1985, petitioner received $ 11,617.88 in commissions from TLC. TLC reported a loss for 1985; petitioner's distributive share of such loss was $ 9,557. In 1985, petitioner purchased an oil painting for $ 16,000. Of this $ 16,000, $ 8,000 was paid by cashier's check drawn on the Bank of Telluride on July 26, 1985, and the remainder was paid by two $ 4,000 checks drawn on petitioner's *403 Bank of Telluride account dated August 19, and September 19, 1985, respectively. Petitioner did not withdraw the funds used for the cashier's check from his Bank of Telluride account. In September 1985, petitioner purchased fur coats for approximately $ 3,800. The record does not reflect whether he paid for these purchases in cash or by checks. During 1985, petitioner wrote checks to cash, drawn on his Bank of Telluride account, totaling $ 8,894. Petitioner did not file a Federal income tax return for 1985. Because petitioner had inadequate records, respondent determined petitioner's 1985 income using the bank deposit and cash expenditure analysis. On January 21, 1986, Undersheriff Sky Walters of the San Miguel County, Colorado, Sheriff's Office conducted a search of petitioner's Telluride apartment. He found 1-1/4 pounds of dry marijuana, packaged in a number of bags, at least 15 of which held what he described as "salable" amounts. He also found a substance which is frequently used to dilute cocaine for sale. On January 22, 1986, a Colorado warrant was issued for the arrest of petitioner for possession with intent to dispense, sell, or distribute marijuana. Petitioner *404 was later arrested in Denver, Colorado. These charges were subsequently dismissed without prejudice. On January 14, 1988, petitioner was convicted of the 1984 California charge of possession of marijuana for sale. Criminal charges were also brought against Melinda, but were later dropped. Respondent's Determination and Present Position
Respondent reconstructed petitioner's 1985 gross income, as follows: Item
Amount
Unexplained deposits to bank account
$  49,183
Investment in TLC
44,588
Purchase motorhome
20,770
Art objects
16,500
Investment in Elks Building
15,000
Other major purchases
13,813
Cash payments on land purchases
8,500
Bronco purchase
5,500
One pound of marijuana
2,000
Miscellaneous small cash purchases
1,346
Total
177,200
Such determination did not include the amount received as commissions from TLC. Respondent now concedes (1) the amount of unexplained bank deposits should be $ 30,822, rather than $ 49,183, and (2) the purchase of the Bronco did not result in income to petitioner. The parties stipulated that petitioner's capital contribution in TLC was $ 54,145 (rather than $ 44,588). OPINION 1. The Deficiency Determination
*405 Petitioner asserts that respondent's deficiency notice is not entitled to the usual presumption of correctness because it is arbitrary and erroneous. Specifically, petitioner asserts that respondent failed to prove that petitioner received any income in 1985 from drug sales, and that respondent failed to calculate petitioner's opening net worth or to determine petitioner's January 1, 1985 cash on hand. Petitioner claims that the deposits and expenditures used by respondent in reconstructing his 1985 income came from cash he received in prior years from loans, gifts, and inheritances, which to a large extent petitioner claims to have saved as a result of his mother's paying his current living expenses. Respondent disputes these assertions and claims. As a general rule, the Commissioner's deficiency determination is presumptively correct, and the taxpayer bears the burden of coming forward with sufficient evidence to overcome the presumption. ; , affg. . But such presumption *406 of correctness is only as strong as its rational underpinnings. Where it lacks a rational basis the presumption evaporates. Otherwise the Commissioner could, merely by arbitrarily issuing a naked assessment, place upon the taxpayer the unfair, and at time [sic] impossible, burden of proving a negative, that he did not receive the illegal income assessed against him.
, affg. in part and revg. and remanding in part . Thus, where there is alleged unreported income from illegal activities, courts have required the Commissioner to offer some substantive evidence connecting the taxpayer to the alleged illegal income-producing activity before according the Commissioner's determination a presumption of correctness. ; ; , revg. . Once the Commissioner demonstrates that the *407 taxpayer possessed liquid assets or has expended funds or made substantial cash deposits in a bank, the presumption of correctness generally afforded to respondent's determination remains. ; , affg. ; , affd. without published opinion ; . In such situations, the taxpayer is deemed connected to the assets, not the income-producing activity. In the instant case, petitioner acknowledged (through his testimony and by stipulation) that during 1985 he deposited $ 93,000 into bank accounts, made cash expenditures exceeding $ 67,000, and wrote checks exceeding $ 70,000. Further, petitioner acknowledged receiving commission income from TLC which he did not report on a tax return. And, in January 1986, *408 it is undisputed that the authorities seized from his residence 1-1/4 pounds of marijuana packaged in a number of bags. Thus, respondent has produced substantive evidence showing not only petitioner's connection with an illegal income-producing activity, but also petitioner's possession of a substantial amount of cash and his substantial bank deposits and cash expenditures. Hence, respondent has established the requisite underpinnings for the deficiency determination. Accordingly, petitioner bears the burden of explaining the source and nontaxability of the bank deposits and cash expenditures. Section 6001 requires taxpayers to maintain adequate records from which their correct tax liability may be determined. ; . Where a taxpayer fails to maintain the required records, section 446 authorizes the Commissioner to reconstruct income in accordance with a method which clearly reflects the full amount of the income received. . The reasonableness of the reconstruction *409 is considered in light of the surrounding facts and circumstances. Id.
The reconstruction of income method used here is similar to that used in We therein upheld the Commissioner's income reconstruction determination, and the Court of Appeals for the Tenth Circuit, in affirming our decision, noted that the taxpayer kept inadequate or no records and that the sources of the funds expended were "matters peculiarly within [the taxpayer's] knowledge". . In the instant case, respondent has reduced the amount of petitioner's unexplained bank deposits (and accordingly reduced the amount of reconstructed income) to reflect the return of deposits on real property purchase contracts, the payment in liquidation of petitioner's brokerage account, and other nontaxable funds. We are satisfied that respondent's reconstruction of petitioner's 1985 income, as modified through concessions, is reasonable given the fact that petitioner kept few records relating to his income from prior years or relating to his assets existing at the beginning of 1985. In explanation of the bank deposits *410 and cash expenditures, petitioner claims that: (1) Petitioner's mother and Mr. Fremont-Smith, a close friend, had given petitioner checks and made payments on his behalf; (2) he inherited money from his father's estate and, following his mother's death, received money from a trust fund; (3) he developed a distrust of banks and a sense of frugality from his wealthy grandfathers, who had given him gold coins; and (4) he had a cash hoard of $ 110,000 as of the end of 1984, which he first kept in safe deposit boxes in Redding, then in the car in which he and Melinda traveled, and, finally, in a motorhome. At trial, petitioner introduced copies of numerous checks payable to him or on his behalf from Mr. Fremont-Smith and his mother, but these checks bore dates between 1976 and 1981 and totaled less than $ 15,000. Although we believe that petitioner's mother and friends may have made modest gifts or loans to petitioner, we do not believe he had a $ 110,000 cash hoard as of the end of 1984. First, petitioner acknowledged that he did not receive money from the trust fund until the end of 1985, and then he received only "a couple of thousand" dollars. Second, there is nothing in the record *411 indicating that at the beginning of 1985 petitioner had any significant amount remaining from his inheritance from his father's estate in 1970, or, for that matter, remaining from any other amounts given to him in prior years. Third, petitioner's last employment was in 1978. Fourth, petitioner was not clear as to the total amount of the cash hoard; he testified that "it was in the neighborhood of $ 110,000" and he had no idea as to the denomination of the dollar bills he possessed. Finally, Melinda's testimony contradicted petitioner's allegation of a large cash hoard -- she stated she never saw cash in any notable amount. Furthermore, petitioner did not convince us that the 1-1/4 pounds of marijuana seized from his Telluride apartment in January 1986 was for his personal use, as opposed to for sale, or that he grew the marijuana in 1984 and kept it until January 1986. The marijuana was packaged in a number of bags, some of which contained amounts which even petitioner acknowledged were salable. Petitioner was not a credible witness. And we are not bound to accept (and do not accept) petitioner's uncorroborated, self-serving testimony. , *412 affg. ; , affg. ; . We also reject petitioner's contention that respondent failed to give petitioner credit for cash accumulated before 1985 and failed "to produce a starting point (a beginning net worth)". The burden is not that of respondent. Petitioner offered no sufficient records or other corroborative evidence in this regard. On the other hand, respondent introduced evidence of potential sources of income (marijuana sales and real estate activities) to support her reconstruction of petitioner's 1985 income. ; . Petitioner asserts that since the cash expenditures occurred in early 1985, the source for such expenditures has to be pre-1985. We disagree. The earliest expenditure was the purchase of the motorhome on or about January 10, 1985. But there is nothing *413 in the record to indicate when in 1985 petitioner made the payment. Further, it is not clear when in January 1985 petitioner purchased the sculpture and stereo equipment. We consider it entirely possible that the source of income for these expenditures was marijuana sales made in early 1985. 2. Self-Employment Tax
Except for his testimony and contention that he had no net earnings from any trade or business in 1985, petitioner did not present evidence contesting, or disagreeing with, respondent's determination that he is subject to self-employment tax under section 1401. Petitioner did not contend that the TLC commissions for 1985, which he admitted receiving, would not be self-employment income. Petitioner failed to show that he is not subject to self-employment tax as determined by respondent. Thus, petitioner is subject to self-employment tax as determined. 3. Additions to Tax
Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition equals 5 percent of the tax required to be shown on the return for the first month, *414 with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. The burden of showing reasonable cause rests with petitioner. Rule 142(a). Petitioner did not present evidence to establish or contend on brief that there is reasonable cause for his failure to file a return for 1985. Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a)(1). Section 6653(a)(1) provides for an addition to tax of 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to the negligence. Negligence is the lack of due care, or the failure to do what a prudent person would do under the circumstances. . Petitioner bears the burden of establishing that the negligence addition to tax does not apply. Petitioner failed to present evidence or *415 make argument regarding the negligence addition to tax. Thus, we sustain respondent's determination that petitioner is liable for the additions to tax under sections 6653(a)(1) and (2). Section 6654 imposes an addition to tax for underpayment of estimated tax by a taxpayer. We have concluded that petitioner had a tax liability for 1985. Respondent determined that there was an underpayment of estimated tax. Petitioner did not present evidence or contend that there was no underpayment or attempt to show that he met any of the exceptions to the addition to tax set forth in section 6654(d). . Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6654 for 1985. To reflect concessions by respondent, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. At various times, petitioner used the following aliases: Albert Johnson, Albert Bradley, Albert Bradley Royce, and Avery Carter Johnson.↩
1. Petitioner used the name Albert Johnson in connection with these payments.↩